**\*\* E-filed June 6, 2012 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SISTERS OF NOTRE DAME DE NAMUR, | No. C10-01807 HRL |
| Plaintiff, | **ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| MRS. OWEN J. GARNETT-MURRAY; ET AL., | **[Re: Docket Nos. 80, 87]** |
| Defendants. | |

BACKGROUND

This is an action for Resource Conservation and Recovery Act ("RCRA") violations, 42 U.S.C. § 6972, and for state law nuisance and trespass. The Sisters of Notre Dame de Namur ("the Sisters" or "plaintiffs") brought this action to remediate contamination of real property. The Sisters received a plot of land located in Sunnyvale, CA in 2007 through a charitable bequest in the will of Annette Mardesich (the "subject property" or "Mardesich property"). The subject property borders a shopping center called Fremont Corners. Fremont Corners is owned by defendants Mrs. Garnet Murray and Fremont Corners, Inc. Murray, her late husband, and several other individuals not parties to this action developed Fremont Corners in 1959 as shareholders of Fremont Corners, Inc. At present, Garnet Murray owns 30% of Fremont Corners as an individual, and owns the remaining 70% as the sole shareholder of Fremont Corners, Inc. Garnet Murray's son, Jay Murray, currently the Vice President of Fremont Corners, Inc., manages and oversees Fremont Corners' day to day operations.

**United States District Court**
For the Northern District of California

1    One of the Fremont Corners shops that borders the subject property is a dry cleaners called

2 Angela's Cleaners, owned by defendant Manlei Chiao. Chiao has operated Angela's Cleaners since

3 2003, but a dry cleaners has operated in the same retail space since approximately 1960. A dry

4 cleaning fluid called tetrachloroethylene (also known as perchloroethylene, or "PCE") was used at

5 the cleaners until 2009. It is undisputed that PCE has contaminated the soil beneath the shopping

6 center and has migrated (in the form of PCE vapor) into the soil of the adjacent Mardesich property.

7 Chiao and several of the previous owners have admitted to using PCE in their dry cleaning

8 operations. Chiao replaced the PCE equipment in 2009 with dry cleaning equipment that does not

9 use PCE.

10    Plaintiffs contend that they learned of the PCE contamination on their property in

11 approximately October 2007, shortly after they inherited the land. They intended to sell the property

12 to a residential developer, but have been unable to do so because building permits cannot issue until

13 hazardous materials on the site are reduced to non-dangerous levels.[1] Plaintiffs contend that the

14 defendants knew about the PCE contamination in 2006, if not earlier, but made no efforts to

15 remediate until 2010, nearly five years later. It is undisputed that Murray obtained two separate

16 environmental analyses of the soil beneath Fremont Corners in 2006 and 2007 while negotiating

17 with potential buyers of Fremont Corners. In both cases, a PCE "plume" was detected beneath the

18 dry cleaners, which exhibited PCE levels many times the permissible levels.[2] No efforts were made

19 to begin remediation as a result of these analyses.

20    In July 2008, plaintiffs sent a letter to Fremont Corners, Inc. notifying it of the

21 contamination on the Mardesich property and requesting that it begin remediation. In March 2009,

22 defendants hired the company Geologica to conduct a comprehensive environmental analysis.

23

24 [1] At the hearing on parties' cross-motions for summary judgment, plaintiff's counsel stated that the Sisters are now under contract with a prospective buyer, but that the contract contains unfulfilled contingencies, which may involve complete remediation of the contamination.
25 [2] The San Francisco Bay Regional Water Quality Control Board ("Regional Board") sets Environmental Screening Levels ("ESLs") for hazardous materials. These levels mark the limit
26 below which exposure to a chemical will not cause an unacceptable risk. *See* Dkt. No. 80 ("Plaintiff's Motion") at 4-5. For commercial sites, the ECL for PCE is 1,400 micrograms per cubic
27 meter of air. For residential sites, the ESL for PCE is 410 micrograms per cubic meter of air. *See* Jensen Decl. Exh. 10; Gilhuly Decl. Exh. 1. PCE concentrations on the Mardesich property are as
28 much as 15 times the residential ESL, and concentrations on the Fremont Corners property are as much as 70 times the commercial ESL.

2

**United States District Court**
For the Northern District of California

1   Geologica contacted the Santa Clara County Department of Environmental Health ("DEH") and in

2   May 2010 defendants submitted to DEH a remediation plan, which DEH approved. In July 2010,

3   plaintiffs filed this lawsuit (after the plan had been approved but before remediation began).

4   Remediation actually began in October 2011 and is now ongoing.[3]

5          Plaintiffs move for partial summary judgment on the issue of liability for all three of their

6   claims. Dkt. No. 80. The Fremont Corners defendants oppose the motion and have filed a cross-

7   motion for summary judgment in which they argue that (1) plaintiffs lack standing on their RCRA

8   claim, and (2) in any event, defendants are entitled to judgment on all three of plaintiff's claims.

9   Dkt. Nos. 81, 87. Both motions have been fully briefed by plaintiff and the Fremont Corners

10  defendants. Chiao, who did not oppose plaintiff's motion, has now reached a settlement with the

11  plaintiff, and the plaintiff states that its motion is MOOT as to Chiao. Dkt. No. 96. All parties have

12  consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). Based on the moving

13  papers, arguments presented at hearing, and all applicable authority, the court rules as follows.

                                    LEGAL STANDARD

15         Summary judgment is proper where there is "no genuine issue as to any material fact and []

16  the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary

17  judgment serves to "isolate and dispose of factually unsupported claims or defenses." *Celotex v.*

18  *Catrett*, 477 U.S. 317, 323-24 (1986). A party "may move for summary judgment identifying . . . the

19  *part* of each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a).

20  This includes the ability to seek summary judgment on the issue of liability, leaving the issue of

21  damages for trial." *Id.*; *see also* 11-56 Moore's Federal Practice - Civil § 56.122.

22         The party seeking summary judgment bears the initial burden of demonstrating the absence

23  of a genuine issue of material fact. *Id.* at 323. If this burden is met, then the burden shifts to the

24  party opposing summary judgment to "designate 'specific facts showing that there is a genuine issue

25  for trial.'" *Id.* at 324. To defeat a motion for summary judgment, the non-moving party must show a

26  ---
    [3] The remediation plan calls for the use of extraction wells. Extraction wells are essentially vacuum
27  pumps that pull contaminants out of the soil. Geologica takes periodic readings of soil samples to
    calculate PCE levels. When PCE levels near zero, the wells are shut off to allow the PCE to
28  "rebound" in the soil, and are then turned back on to continue pumping. This periodic on/off process
    continues until PCE levels do not rebound above the ESLs. At the hearing, defendants stated that
    they had recently turned the pumps back on after allowing the PCE to rebound in the soil.

United States District Court
For the Northern District of California

1  dispute of material facts, those "that might affect the outcome of the suit under the governing law."

2  *Anderson v. Liberty Lobby, Inc.*, 477 U.S 242, 247-48 (1986). The "mere existence of a scintilla of

3  evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for

4  the [non-moving party]." *Id.* at 252. "When the nonmoving party has the burden of proof at trial,

5  the moving party need only point out 'that there is an absence of evidence to support the nonmoving

6  party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*quoting Celotex Corp.*,

7  477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon

8  mere allegations or denials, but must present evidence sufficient to demonstrate that there is a

9  genuine issue for trial. Id.

10  In deciding a motion for summary judgment, the court must view the evidence in the light

11  most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Id.* at 255.

12  It is the court's responsibility to determine whether the facts set forth by the non-moving party "are

13  such that a rational or reasonable jury might return a verdict in its favor based on that evidence."

14  *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1997).

DISCUSSION

15  

16  A. Plaintiff's RCRA Claim

17  1. *Standing*

18  To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an

19  "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

20  hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

21  likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

22  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992).

23  Defendants challenge the third element of standing—the redressability of plaintiff's alleged harm.

24  They argue that this court cannot redress plaintiffs' harms by issuing an injunction because an

25  injunction would only order defendants to comply with the DEH's remediation plan, which

26  defendants are already doing. Although the defendants' motion is not a model of clarity, their

27  argument appears to be as follows: (1) plaintiff's claims are not redressable because they are moot;

28  and (2) plaintiff's claims are not redressable because (a) no further contamination can occur due to

4

United States District Court
For the Northern District of California

1    new California regulations phasing out the use of PCE in dry cleaning equipment; and (b) DEH has

2    already approved and is overseeing a remediation plan. Dkt; No. 87, pp. 6-7. Defendant's first

3    argument is improper, as mootness is considered separately from standing *after* standing has been

4    established. See Part A.2, supra.

5            Defendants' second argument relies on an assumption that the combination of new

6    California regulations (for which defendants have not provided any citation) and DEH oversight of

7    their cleanup efforts renders further contamination impossible. If that were the case, then plaintiff's

8    sought-after order would be wholly superfluous. However, defendants' assumption is invalid. While

9    current cleanup efforts and the existence of a California regulation phasing out the use of PCE

10   (which defendants never actually cite in their moving papers) make further contamination

11   *improbable*, they do not guarantee that the current contamination will be remediated, nor do they

12   guarantee that no future contamination will occur. If this court grants plaintiff's request for an

13   injunction that requires the defendants to completely remediate the existing contamination, plaintiff

14   will receive a benefit that the current voluntary cleanup efforts do not provide.

15           Finally, defendants also argue that plaintiff's claim is non-redressable because it seeks an

16   order directing an independent, non-party actor to undertake some course of action. This is an

17   inaccurate statement of the facts, and the authority defendants cite for this proposition is not

18   applicable to the instant matter. *See Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123, 1125 (9th Cir.

19   2006). In *Glanton*, an ERISA case, plaintiffs sought an order that would have had the indirect effect

20   of influencing plaintiffs' employers' insurance companies to change their drug plan policies. The

21   court found that plaintiffs lacked redressability because the sought-after effect (a change in drug

22   plan policy) was quite remote from the order sought. Here, plaintiffs seek an order compelling

23   *defendants* to complete remediation of the contaminated soil. There is no indirect conduct that

24   plaintiffs seek to induce, and so *Glaxton* is inapposite.

25           Accordingly, because the issuance of an injunction would provide plaintiff with a remedy

26   beyond what the current cleanup process offers, defendants have failed to show that plaintiff's claim

27   is non-redressable and defendants' motion is DENIED with respect to redressability.

28                   2. *Mootness*

1         The court shall "address the question of standing before turning to mootness." *Friends of the*

2   *Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Defendants argue that

3   "plaintiff's claims are now moot and were moot at the time the complaint was filed." Dkt. No. 94, p.

4   2. Plaintiffs filed their complaint on April 27, 2010, almost two months before defendants got DEH

5   approval of their mediation plan. In other words, at the time the complaint was filed, there was no

6   remediation plan at all, and no remediation had yet begun. Defendants attempt to argue that because

7   no one was actually living on the Mardesich property when the complaint was filed, "the risk to

8   human health or the environment . . . did not exist. . . . There was and is no potential population at

9   risk." Dkt. No. 94, p. 3. This argument clearly fails. RCRA permits a plaintiff to bring a citizen suit

10  to enjoin the *threat* of endangerment due to exposure to hazardous wastes. 42 U.S.C. § 6972(a).

11  Therefore, it is undisputed that plaintiff's claims were not moot at the time the complaint was filed.

12        Defendants also argue that because they took steps to eliminate the use of PCE at Angela's

13  Cleaners and voluntarily submitted to DEH oversight, plaintiff's claims are now moot. "[T]he

14  standard for determining whether a case has been mooted by the defendant's voluntary conduct is

15  stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly

16  wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 167

17  (*citing United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203, 21 L. Ed. 2d

18  344, 89 S. Ct. 361 (1968)). Defendants argue that several factors show that their voluntary conduct

19  has mooted plaintiff's claims. First, Chiao has replaced the PCE dry cleaning equipment with other

20  machinery that does not use PCE. Dkt. No. 87, p. 6. Next, the California Air Resources Board

21  ("CARB") passed regulations in 2006 phasing out the use of PCE by 2023. *Id.* While these two facts

22  do significantly decrease the possibility that further PCE contamination could occur, they do not

23  "make it absolutely clear" that further contamination "could not reasonably be expected to occur."

24  Angela's Cleaners has operated under three separate owners since 2000. For all the current record

25  before the court shows, in the next eleven years (before PCE must be entirely phased out), it is

26  possible that another owner could appear who would resume use of PCE at Angela's Cleaners.

27        Furthermore, it is possible that defendants could fail to complete the remediation process

28  now underway. Should this occur, plaintiff would continue to suffer harm despite there having been

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   no *additional* PCE leakage by defendants. Indeed, the declaration of Daniel Matthews, senior

2   hydrogeologist for Geologica, the company overseeing the remediation process, establishes that the

3   DEH has not established "specific requirements for case closure." Dkt. No. 84 ¶ 4. Accordingly, the

4   fact that defendants probably will not allow any new PCE to leak into the soil does not meet the

5   "stringent" standard for establishing mootness based on a defendant's voluntary conduct.

6          Finally, defendants argue that the "primary jurisdiction doctrine" prevents this court from

7   asserting jurisdiction over the cleanup process. Dkt. No. 87, p. 9 (*citing GTE.NET, L.L.C. v. Cox

8   Communs., Inc.*, 185 F. Supp. 2d 1141, 1144 (S.D. Cal. 2002) (holding that a court may "route the

9   threshold decision as to certain issues to the agency charged with . . . supervision or control of the

10  particular industry or activity involved")). In fact, although defendants first argue that plaintiff's

11  claim is "barred" by this jurisdiction, they admit in their reply that the doctrine is both disfavored

12  and discretionary. Dkt. No. 94, p. 8. In fact, a private citizen suit under 42 U.S.C. § 6972(a)(1)(B) is

13  not barred unless the State (1) "has commenced and is diligently prosecuting an action under 42

14  U.S.C.A. § 6972(a)(1)(B)," (2) "is actually engaging in a removal action under CERCLA'" (2) "or

15  has incurred costs to initiate a [Remedial Investigation and Feasibility Study] under section 104 of

16  CERCLA and is diligently proceeding with a remedial action under that act." *Gilroy Canning Co. v.

17  California Canners & Growers*, 15 F. Supp. 2d 943, 946 (N.D. Cal. 1998). None of these factors are

18  present in this case, and therefore, the court finds no basis for applying the primary jurisdiction

19  doctrine.

20         Accordingly, defendants' having made no viable argument that plaintiff's claims are now

21  moot or were moot when the complaint was filed, defendants' motion is DENIED with respect to

22  mootness. The court now proceeds to the merits of plaintiff's RCRA claim.

23                     3. *Defendants' Liability under Sec. 6972(a)(1)(B)*

24         Under RCRA, "any person may commence a civil action on his own behalf . . . against any

25  person . . . including any past or present generator, past or present transporter, or past or present

26  owner or operator of a treatment, storage, or disposal facility, who has contributed or who is

27  contributing to the past or present handling, storage, treatment, transportation, or disposal of any

28

1   solid or hazardous waste which may present an imminent and substantial endangerment to health or

2   the environment." 42 U.S.C. § 6972(a)(1)(B).

3          To establish acclaim for injunctive relief under this section, the plaintiff must show that: (1)

4   "the conditions at the site may present an imminent and substantial endangerment;" (2) "the

5   endangerment stems from the handling, storage, treatment, transportation or disposal of any solid or

6   hazardous waste;" and (3) "the defendant has contributed or is contributing to such handling,

7   storage, treatment, transportation or disposal." *Lincoln Properties v. Higgins*, 1993 U.S. Dist.

8   LEXIS 1251, *31 (E.D. Cal. Jan. 21, 1993) (*citing United States v. Conservation Chemical Co.*, 619

9   F. Supp. 162, 199-200 n.22 (W.D. Mo. 1985)).

10                          a.   Site Conditions May Present an Imminent and Substantial Endangerment

11          Section 6972(a)(1)(B) authorizes injunctive relief where the site conditions "may present an

12  imminent and substantial endangerment to health or the environment." Courts conclude that this

13  standard embraces a broad expanse of potentially threatening activity. *Lincoln* collects and analyzes

14  the relevant authority comprehensively. "May" is "'expansive language, which is intended to confer

15  upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate

16  any risk posed by toxic wastes.'" *Lincoln*, 1993 U.S. Dist. LEXIS 1251, *42 (*quoting Dague v. City

17  of Burlington*, 935 F.2d 1343, 1355 (2nd Cir. 1991) (internal quotations omitted)). Similarly, the

18  term "endangerment" includes potential, rather than merely actual, harm. "[E]ndanger means

19  something less than actual harm. When one is endangered, harm is threatened; no actual injury need

20  ever occur." *Id.* at *43 (*quoting Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1, 13

21  (D.C. Cir. 1976), cert. denied, 96 S. Ct. 2662 (1976)). "A finding of 'imminence' does not require a

22  showing that actual harm will occur immediately so long as the risk of threatened harm is present."

23  *Id.* at 44 (*citing United States v. Conservation Chemical Co.*, 619 F. Supp. 162, 199-200 (W.D. Mo.

24  1985)). Finally, the term "substantial" does not require quantification of the endangerment . . . .

25  [E]ndangerment is substantial if there is some reasonable cause for concern that someone or

26  something may be exposed to a risk of harm by a release or a threatened release of a hazardous

27  substance if remedial action is not taken. *Id.* (*citing Conservation Chemical*, 619 F. Supp. at 194).

28

**United States District Court**
For the Northern District of California

8

**United States District Court**
For the Northern District of California

1    Here, plaintiffs have established by undisputed evidence that the contamination at Fremont

2   Corners may present an imminent and substantial threat of harm ("endangerment") to human health.

3   The soil under Angela's Cleaners contains PCE soil vapor levels up to 70 times the commercial ESP

4   levels. The PCE has migrated onto the Mardesich property, where it exceeds the residential ESL

5   levels by a factor of 15. Although defendants argue that no one lives on the Mardesich property, this

6   does not eliminate the *potential* harm to human health, nor does it address the incredibly high PCE

7   levels under the Fremont Corners property, which pose an *actual* risk to the employees and

8   customers who work at or visit Fremont Corners shops. Plaintiffs need not prove that actual harm

9   exists on their land alone. Rather, the levels of PCE soil vapor on both properties far exceed

10   California's established limits for nonhazardous exposure to humans and do pose an imminent and

11   substantial endangerment under RCRA.

12                    b.   Endangerment Stems from Handling, Storage, Treatment, Transportation,

13                         or Disposal of a Solid or Hazardous Waste

14    The Environmental Protection Agency has determined that PCE is a "hazardous waste"

15   under RCRA. *See* 40 C.F.R. § 261.31 and Appendix VII to 42 C.F.R. Part 261; *see also Lincoln*,

16   1993 U.S. Dist. LEXIS 1251, *50. The PCE plume under Angela's Cleaners resulted from the

17   improper storage and/or disposal of PCE by the owners and operators of the dry cleaners. Chiao

18   admitted in her deposition that the PCE in her dry cleaning equipment would periodically run low,

19   requiring her to purchase new PCE to refill the dry cleaning equipment, and that she did not know

20   where the PCE went. All those who have evaluated the site for PCE contamination conclude that

21   Angela's Cleaner's is the source of the PCE plume under the store and on the Mardesich property.

22   Therefore, there is no dispute that the endangerment described above stems in part from the

23   handling, storage, and/or disposal of PCE, a hazardous waste.

24                    c.   Defendant Contributed to the Handling, Storage, Treatment,

25                         Transportation, or Disposal of  Hazardous Waste

26    Plaintiffs argue that Garnet Murray and Fremont Corners, Inc. are liable for the PCE

27   contamination because they contributed to the handling, storage, treatment, or disposal of PCE at

28

**United States District Court**
For the Northern District of California

1   Fremont Corners. Defendants argue that they not should be held liable because neither of them

2   actually "contributed" to the handling, etc. of PCE at Angela's Cleaners.

3          Garnet Murray owns a 30% interest in Fremont Corners as an individual, and she owns the

4   remainder of the property as the sole shareholder of Fremont Corners, Inc. Defendants contend that

5   Garnet has not been on the premises for over 35 years and that she had no actual knowledge of any

6   relevant facts at any point throughout the history of PCE contamination at Fremont Corners.

7   Plaintiffs argue that both Garnet Murray and Fremont Corners, Inc. committed "passive inaction" by

8   failing to take any steps to correct the contamination for over three years following the first

9   environmental assessment in November 2006. "[P]assive inaction or studied indifference can create

10  liability under RCRA." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 204 F. Supp. 2d 804, 810

11  (D.N.J. 2002) (*citing U.S. v. Price,* 523 F. Supp. 1055, 1071 (D.N.J. 1981), *aff'ed,* 688 F.2d 204 (3d

12  Cir. 1982)). "RCRA is not primarily targeted at punishing environmentally unsound acts, but rather

13  at reducing 'the generation of hazardous waste and . . . ensuring the proper treatment, storage and

14  disposal of that waste which is nonetheless generated.'" *Id.* at 810 (*quoting Meghrig v. KFC*

15  *Western, Inc.*, 516 U.S. 479, 483, 134 L. Ed. 2d 121, 116 S. Ct. 1251 (1996)). Therefore, an owner's

16  "potential culpability [is] irrelevant." *Id.*

17         Here, as in *Interfaith Community Org.*, it is undisputed that (1) Murray and Fremont

18  Corners, Inc. knew of PCE contamination in 2006; and (2) the PCE vapor "in some form or

19  fashion," may have caused or may still be causing "further damage to the land and surrounding

20  environment." *Id.* at 811. Plaintiffs present evidence that the environmental analysis done in 2006

21  was directed to Mrs. Murray at "Fremont Center, Inc." <u>See</u> Jensen Decl., Exh. 7, p. 1. Defendants

22  have admitted that they took no steps to remediate the contamination until 2009. The court is not

23  prepared to hold as a matter of law that plaintiff's evidence establishes liability through passive

24  inaction or studied indifference, although it might well persuade a jury.

25         Accordingly, this court finds that a genuine issue of material fact exists as to whether Garnet

26  Murray and Fremont Corners, Inc. "contributed to" the contamination of Fremont Corners and the

27  Mardesich property through passive inaction. Plaintiff's motion for summary judgment on liability

28  under RCRA is therefore DENIED.

**United States District Court**
For the Northern District of California

1      B.  Plaintiff's Nuisance Claim

2          A nuisance under California law is "[a]nything which is injurious to health, including, but

3   not limited to . . . an obstruction to the free use of property, so as to interfere with the comfortable

4   enjoyment of life or property . . . ." Cal. Civ. Code § 3479. "Failure to clean up contamination

5   causing ongoing damage to property has been held to constitute such a nuisance." *Resolution Trust*

6   *Corp. v. Rossmoor Corp.*, 34 Cal. App. 4th 93, 99 (Cal. App. 4th Dist. 1995). A landlord "cannot be

7   permitted to knowingly stand aside where it is shown that he has the power to remove the [nuisance]

8   from the premises." *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 514 (Cal. App. 5th Dist. 1975).

9   But, a duty of care may only be imposed upon a landlord if he knew of the nuisance. *Id.*

10          Defendants first argue that because plaintiffs have not proven damages, they cannot seek

11  summary judgment on their nuisance claim. This argument fails because the Federal Rule

12  specifically provide that a party may move for partial summary judgment on one element of a claim.

13  *See* Fed. R. Civ. P. 56(a).

14          Defendants next argue that because plaintiffs have not shown any *conduct* by Garnet Murray

15  and Fremont Corners, Inc. in furtherance of the nuisance, they cannot prevail on their claim. They

16  argue that plaintiff must show they were "active participants" in the activities that gave rise to the

17  nuisance. Dkt. 81, p. 14. Rather, on a claim for nuisance, a plaintiff must at least show (1) that the

18  landlord had actual knowledge of the nuisance-creating conduct; and (2) the landlord was negligent.

19  *Resolution Trust Corp. v. Rossmoor Corp.*, 34 Cal. App. 4th 93, 100 (Cal. App. 4th Dist. 1995).

20  Plaintiff argues that defendants knew of the contamination but "willfully" ignored it.

21          Neither party has squarely addressed the issue of negligence. To prove negligence, the

22  plaintiff must show: "(1) the defendant owed the plaintiff a duty of due care; (2) the defendant

23  breached that duty; (3) the plaintiff suffered injury; and (4) the breach proximately caused the

24  injury." *Id.* at 101. "[A] commercial landowner cannot totally abrogate its landowner responsibilities

25  merely by signing a lease." *Id.* (*quoting Mora v. Baker Commodities, Inc.* 210 Cal. App. 3d 771, 781

26  (1989)). "[I]f a landlord has such a degree of control over the premises that it may fairly be

27  concluded that he [or she] can obviate the presence of the dangerous [condition] and he has

28  knowledge thereof, an enlightened public policy requires . . . imposition of a duty of ordinary care.

United States District Court
For the Northern District of California

1   To permit a landlord in such a . . . situation to sit idly by in the face of [a] known danger to others

2   must be deemed to be socially and legally unacceptable." *Uccello v. Laudenslayer*, 44 Cal. App. 3d

3   at p. 512 n. 7.

4           Here, defendants knew of PCE contamination on their own land in 2006. The environmental

5   analyses generated in 2006 and 2007 warned of potential groundwater contamination. See Jensen

6   Decl., Exhs. 7-8. The 2006 report was directed to "Mrs. and Mr. Murray" at Fremont Center, Inc.

7   Jensen Decl., Exh. 7. While groundwater contamination has not actually occurred in this case, the

8   court concludes that repeated warnings of the risk of such contamination put defendants on notice

9   that the PCE contamination could spread and cause harm beyond the bounds of their property.

10  Under *Uccello*, defendants' actual knowledge in 2006 of a PCE plume under their own property,

11  combined with their "control over the premises" and the ability to "obviate the presence of the

12  dangerous [condition]" does give rise to a duty of ordinary care. Defendants' decision not to take

13  any steps toward remediation constitutes a breach of that duty. Plaintiff has, in fact, suffered

14  contamination on the Mardesich property, which constitutes an injury.[4] Had defendants acted

15  promptly to begin remediation of the contamination on their own property, the contamination of

16  plaintiff's adjoining property would have been lessened or prevented, so defendants' breach

17  proximately caused plaintiff's injury.

18          Accordingly, plaintiff's motion for summary judgment on the issue of liability for nuisance

19  is GRANTED.

20                  C.   Plaintiff's Trespass Claim

21          "[E]very wrongful entry upon lands in the occupation or possession of the owner constitutes

22  a trespass. . . ." *Martin Marietta Corp. v. Insurance Co. of North America*, 40 Cal. App. 4th 1113,

23  1132 (Cal. App. 2d Dist. 1995) (*citing Triscony v. Brandenstein* 66 Cal. 514, 515 (1885). Failure to

24  clean up contamination causing ongoing damage to property "gives rise to an action for continuing

25  trespass." *Resolution Trust Corp.* v. Rossmoor Corp., 34 Cal. App. 4th 93, 99 (Cal. App. 4th Dist.

26  1995) (*citing Mangini v. Aerojet-General Corp.* 230 Cal. App. 3d 1125, 1133-1137 (1991)). The

27  negligence analysis as applied in claims for nuisance shall apply to claims for trespass as well. *See*

28
---
[4] The injury suffered by plaintiffs may include losses associated with plaintiff's efforts to sell the Mardesich property. The extent of such losses is not at issue in the pending motions.

*Rancho Viejo v. Tres Amigos Viejos*, 100 Cal. App. 4th 550, 562, n. 6 (Cal. App. 4th Dist. 2002) (*citing* Rest.2d Torts, § 821D, com. e, p. 102).

Applying the same negligence analysis to this claim as it applied to plaintiff's nuisance claim, above, the court concludes that plaintiff has established liability for trespass by the defendants. The defendants' only argument in opposition is that there are other hazardous materials on the Mardesich property that did not migrate from Fremont Corners. Dkt. No, 81, p. 15. The presence of other hazardous materials on the Mardesich property is not the subject of this action and has no bearing on the pending motions.

Accordingly, the plaintiff's motion for summary judgment on the issue of liability for trespass is GRANTED.

CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. As plaintiff has settled with defendant Manlei Chiao, the motion is DENIED as MOOT as to all claims against Chiao. Plaintiff's motion is granted as to the issue of liability for plaintiff's claims for nuisance and trespass against Garnet Murray and Fremont Corners, Inc. Plaintiff's motion is denied as to the issue of liability for plaintiff's RCRA claim against Murray and Fremont Corners, Inc.

2. Defendants' motion for summary judgment is DENIED in its entirety.

Dated: June 6, 2012

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

United States District Court
For the Northern District of California

13

**United States District Court**
For the Northern District of California

**C10-01807 HRL** N**otice will be electronically mailed to:**

| | |
|---|---|
| W. Stephen Wilson | SWilson@weinbraub.com |
| Christopher Jensen | cdj@bcltlaw.com |
| Nicole Martin | nmm@bcltlaw.com |
| R. Morgan Gilhuly | rmg@bcltlaw.com |
| Douglas Barry | DABLAW22@aol.com |
| Thomas Clarke, Jr. | tclarke@ropers.com |
| Timothy Dolan | tdolan@rmkb.com |
| Kwi Yee | kwioui@yahoo.com |
| Eleanor Knight | eleanor.knight@wilsonelser.com |
| Ralph Robsinson | Ralph.Robinson@wilsonelser.com |
| Randall Lee | randy@wfbm.com |
| Noel Edlin | nedlin@behblaw.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

14